## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | | |
|---|---|---|
| **RONNIE REEDER,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 4:09CV1627RWS/MLM** |
| | ) | |
| **DAVE DORMIRE,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This matter is before the court on the Petition for Writ of Habeas Corpus filed by Ronnie Reeder ("Petitioner") filed pursuant to 28 U.S.C. § 2254. Doc. 1. Respondent filed a Response to Order to Show Cause Why a Writ of Habeas Corpus Should Not Be Granted. Doc. 7 Petitioner filed a Reply. Doc. 18. This matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1). Doc. 2.

## I.
## BACKGROUND

Petitioner was "indicted on four counts of statutory rape in the first degree, three counts of statutory sodomy in the first degree, one count of the class B felony of child molestation in the first degree and one count of the class C misdemeanor of assault in the [third] degree."[1] State v. Reeder, 182 S.W.3d 569, 572 (Mo. Ct. App. 2005). As explained by the Missouri appellate court:

---

[1] The Missouri appellate court mistakenly stated that Petitioner was indicted for assault in the first degree. The Information reflects that he was charged with assault in the third degree. Resp. Ex. C at 10. As stated below, the trial court dismissed one count of statutory rape and two counts of statutory sodomy and the State amended the child molestation charge to attempted child molestation. Resp. Ex. C at 47.

[Petitioner] filed a Motion to Sever. Specifically, [Petitioner] requested one trial on counts relating to [M.O.], one trial on the statutory rape count relating to [T.W.] and one trial on the assault charge as it related to a third cousin and victim. The trial court denied [Petitioner's] Motion to Sever the charges related to sexual acts with [T.W.] and [M.O.] and reserved ruling regarding the assault charge against the third victim. Ultimately, the State filed an order of nolle prosequi on the assault charge.

Id.

The Missouri appellate court summarized the testimony at Petitioner's trial as follows:[2]

Viewed in the light most favorable to the verdict, the evidence adduced at trial established that, in November of 1999, [Petitioner] lived sporadically at 2017 Agnes in the City of St. Louis with his sister, Theresa, Theresa's two children and [T.W.],[3] [Petitioner]'s niece by another sister. Sometime prior to Thanksgiving, [Petitioner] entered the basement where [T.W.] slept, shook her arm to wake her, picked her up underneath her arms, placed her on a dresser, pulled her legs apart and forced his penis into her vagina. [T.W.] was thirteen years-old.

[T.W.] attempted to push [Petitioner] off of her and threatened to go upstairs and tell someone. [Petitioner] informed her that no one was home and warned that it would just hurt a little because it always hurts the first time. [T.W.] alleged that penetration lasted somewhere between one and two minutes, but she could not say if he ejaculated. The next day, [T.W.] told her grandmother what had occurred. In response, [T.W.]'s grandmother, [Petitioner]'s mother, warned [T.W.] not to tell anyone and assured [T.W.] that she would take care of the situation.

---

[2]        In proceedings pursuant to 28 U.S.C. § 2254, a "state court's factual findings carry a presumption of correctness that will be rebutted only by clear and convincing evidence." Hall v. Luebbers, 341 F.3d 706, 712 (8th Cir. 2003) (citing 28 U.S.C. § 2254(e)(1); Lomholt v. Iowa, 327 F.3d 748, 752 (8th Cir. 2003). The law is clear that factual findings by state trial and appellate courts shall be presumed to be correct unless the federal court concludes that the state court findings are an unreasonable application of the facts in light of the evidence presented. See id. Additionally, the Eighth Circuit has held that a habeas petitioner must provide "clear and convincing" evidence "to overcome the presumption of correctness that the law assigns to" findings of the state courts. Ashker v. Class, 152 F.3d 863, 866 (8th Cir. 1998) (citing 28 U.S.C. § 2254(e)(1); 28 U.S.C. § 2254(d)(2); Smith v. Jones, 923 F.2d 588, 590 (8th Cir. 1991)). See also, Laws v. Armontrout, 863 F.2d 1377 (8th Cir. 1988); Brown v. Lockhart, 781 F.2d 654, 658 (8th Cir. 1986). The presumption applies to basic, primary or historical facts and the inferences that can properly be drawn regarding them. See Case v. Mondragon, 887 F.2d 1388, 1393 (10th Cir. 1989).

[3]        Although the court of appeals did not do so, this court has substituted the initials of the victims for their full names.

On New Years Eve 2001, [M.O.], then thirteen years-old, spent the night with [L.W.], another niece of [Petitioner]'s, and [L.W.]'s sister, at [L.W.'s] house at 1420 St. Louis Avenue. The girls drank wine that they found and when one of the girls vomited, [M.O.] agreed to go next door to [L.W.'s] grandmother's home to borrow shampoo and conditioner. After approximately fifteen to twenty minutes [M.O.] returned and told [L.W.] that she and [Petitioner] had sex on the couch.

[M.O.] returned to spend the night at [L.W.'s] house on the weekend of February 2-3, 2002. [Petitioner] stopped by and found [L.W.] and [M.O.] watching a movie. [Petitioner] asked [L.W.] for cigarettes and [L.W.] left the living room to find them. Meanwhile, [Petitioner] sat next to [M.O.] on the couch and penetrated her vagina with his fingers. That night, [L.W.] and [M.O.] slept in separate beds in the same room. [M.O.] awoke to find [Petitioner] on top of her. [Petitioner] kissed and fondled [M.O.] and had intercourse with her.

The State presented the testimony of four witnesses at trial, including [T.W.] and [M.O.]. During cross-examination, defense counsel sought to establish through extrinsic evidence that [T.W.] and [M.O.] engaged in a pattern of false allegations to the police or the Division of Family Services ("DFS") whenever an authority figure angered them. The State objected and, after a lengthy discussion on the record, but outside of the presence of the jury, the trial court decided to allow questions regarding whether the witnesses made accusations against family members in the past, but limited the testimony to false allegations of sexual misconduct. The trial court specifically denied defense counsel the opportunity to cross-examine the witnesses regarding any non-sexual prior allegations that occurred after the Fall of 2000.

The State called Detective Janet McKern from the Sex Crimes Unit of the St. Louis City Police Department to testify. Detective McKern testified that [M.O.]'s mother brought [M.O.] to the Sex Crime Unit on February 6, 2002 to report that [M.O.] had been raped by a family friend. Detective McKern interviewed [M.O.] regarding her sexual encounters with [Petitioner] on December 31, 2001 and February 2, 2002. On cross-examination, Detective McKern admitted that lab reports disclosed no seminal fluid on the shorts [M.O.] claims she wore during intercourse.

[Petitioner] called his mother and his sister to testify in his defense. [Petitioner]'s sister, Tina Marie Pulley, testified that when her daughter, [T.W.], was mad at her, she would call the authorities. Specifically, Pulley testified that [T.W.] became angry when Pulley decided to move out of the neighborhood and contacted the police to accuse Pulley of beating her and having drugs in the house. Pulley attempted to testify that [T.W.] faked numerous pregnancies and once called

"Children and Family Services" and made false allegations against Pulley, but the trial court excluded this testimony.

Pulley explained that [T.W.] and her cousins often made allegations against people in positions of authority. When Pulley and her sister had a problem with boys loitering around their front porch looking for [T.W.], her cousins and her friends, they enlisted [Petitioner] to "run the boys off" several times a day. Pulley testified that the fact that [Petitioner] consistently forced the boys to leave angered the girls and in response "they'd lie on him." Pulley likewise testified that [T.W.] and her cousins previously accused several men with whom Pulley and her sister were in relationships with of raping them because the girls disliked the fact that these men were extremely strict.

At the close of all the evidence, the trial court dismissed one count of statutory rape and two counts of statutory sodomy. Further, the State amended the child molestation charge to attempted child molestation. Accordingly, the court submitted three counts of statutory rape, one count of statutory sodomy and one count of attempted child molestation. Two counts of statutory rape and one count of attempted child molestation involved [M.O.] and one count of statutory rape involved [T.W.].

Reeder, 182 S.W.3d at 572-73.

As further explained by the Missouri appellate court:

The jury found Defendant guilty of: (1) two counts of statutory rape in the first degree with respect to [M.O.] occurring on December 31, 2001 and the weekend of February 2-3, 2002; (2) attempted child molestation in the first degree with respect to [M.O.] on February 2-3, 2002; and (3) statutory rape in the first degree with respect to [T.W.] occurring in November, 1999. The trial court sentenced [Petitioner] to ten years each on the two statutory rape counts to run concurrently with each other and [three][4] years on the attempted child molestation count, concurrent to the ten years on the statutory rape counts. The court also sentenced [Petitioner] to fifteen years on the third count of statutory rape to be served consecutive to the other sentences for a total of twenty-five years.

Reeder, 182 S.W.3d at 573.

---

[4]  The Missouri appellate court mistakenly stated that Petitioner was sentenced to seven years on the attempted child molestation. The record reflects that Petitioner was sentenced to three years for his conviction of attempted child molestation. Resp. Ex. C at 86.

Petitioner filed a direct appeal with the Missouri appellate court. Resp. Ex. A. The Missouri appellate court affirmed Petitioner's conviction by decision dated June 28, 2005. Resp. Ex. E. On August 19, 2005, the Missouri appellate court granted Petitioner's motion to transfer the matter to the Missouri Supreme Court. Resp. Ex. P. On December 20, 2005, the Missouri Supreme Court transferred Petitioner's appeal back to the Missouri appellate court. Resp. Ex. O. By decision dated February 15, 2006, the Missouri appellate court reinstated its original opinion. Reeder, 182 S.W.3d 569. The Missouri appellate court issued the mandate on February 23, 2006. Resp. Ex. N at 3.

On May 15, 2006, Petitioner filed a pro se post-conviction relief motion. Resp. Ex. K at 3-20. Counsel was appointed and filed an amended motion. Resp. Ex. K at 21-38. The motion court denied Petitioner's post-conviction relief motion. Resp. Ex. K at 56-63. Petitioner filed an appeal of the motion court's decision with the Missouri appellate court. By decision, dated June 17, 2008, the Missouri appellate court affirmed the decision of the motion court. Resp. Ex. M. On July 28, 2008, Petitioner filed an application for transfer to the Missouri Supreme Court, which application was denied on September 30, 2008. Resp. Ex. P at 3. On October 6, 2008, the mandate issued for the appeal of Petitioner's post-conviction relief motion. Resp. Ex. P at 3.

Petitioner filed his § 2254 Petition on September 29, 2009.[5] In his § 2254 Petition, Petitioner raises the following four grounds for habeas relief:

(1)     The trial court erred when it restricted Petitioner's use of the victim's prior false allegations;

---

[5]     Petitioner states that he mailed his § 2254 Petition on December 10, 2008. The postmark reflects that it was mailed on September 25, 2009. Doc. 1-2. In his Traverse, however, which was prepared by counsel, Petitioner states that his § 2254 Petition was filed on September 29, 2009, the date it was received by this court. Doc. 18 at 8. As Petitioner's § 2254 Petition was mailed on September, 25, 2009, that is the date the court will apply upon determining the timeliness of the Petition. See Grady v. United States, 269 F.3d 913, 916 (8th Cir. 2001) (extending the prison mail box rule to federal habeas petitions).

**(2)**     The trial court erred during the sentencing phase by admitting the contents of a letter written by one of the victims;

**(3)**     Petitioner received ineffective assistance of counsel during sentencing because trial counsel failed to object to the admission of the victim's letter; and

**(4)**     Petitioner received ineffective assistance of counsel because counsel failed to admit Petitioner's employment records into evidence.

## II.
## EXHAUSTION, PROCEDURAL DEFAULT AND TIMELINESS ANALYSIS

To preserve issues for federal habeas review, a state prisoner must fairly present his or her claims to state courts during direct appeal or in post-conviction proceedings. Sweet v. Delo, 125 F.3d 1144, 1149 (8th Cir. 1997). Failure to raise a claim in a post-conviction appeal is an abandonment of a claim. Id. at 1150 (citing Reese v. Delo, 94 F.3d 1177, 1181 (8th Cir. 1996)). A state prisoner who fails "'to follow applicable state procedural rules [for] raising the claims' (citation omitted) . . . , is procedurally barred from raising them in a federal habeas action, regardless of whether he has exhausted his state-court remedies." Id. at 1151 (citing Coleman v. Thompson, 501 U.S. 722, 731-32 (1991)). "[A] prisoner must 'fairly present' not only the facts, but also the substance of his federal habeas corpus claim." Abdullah v. Groose, 75 F.3d 408, 411 (8th Cir. 1996) (en banc) (citation omitted). "[F]airly present" means that state prisoners are "required to 'refer to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue.'" Id. at 411-12. A state-law claim which is raised in state court which "is merely similar to the federal habeas claim is insufficient to satisfy the fairly presented requirement." Id. at 412.

The United States Supreme Court holds that a state prisoner can overcome procedural default if he or she can demonstrate cause and prejudice for the procedural default. Dretke v. Haley, 541 U.S.

386, 388-89 (2004).  See also Coleman, 501 U.S. at 750  (holding that a state habeas petitioner can overcome procedural default by demonstrating cause for the default and actual prejudice or demonstrate that default will result in a fundamental miscarriage-of-justice); Battle v. Delo, 19 F.3d 1547, 1552 (8th Cir. 1994).  The United States Supreme Court has recently held that because the "cause and prejudice standard is not a perfect safeguard against fundamental miscarriages of justice" the Court has "recognized a narrow exception to the cause requirement where a constitutional violation has 'probably resulted' in the conviction of one who is 'actually innocent' of the substantive offense." Dretke, 541 U.S. at 393 (citing Murray v. Carrier, 477 U.S. 478, 496 (1986); Schlup v. Delo, 513 U.S. 298 (1995)).  "[A] habeas petitioner who wishes to have a procedurally defaulted claim evaluated on its merits 'must show by clear and convincing evidence that but for a constitutional error, no reasonable juror would have found the petitioner [guilty] under the applicable state law.'" McCoy v. Lockhart, 969 F.2d 649, 651 (8th Cir. 1992 ) (citation omitted).  Actual innocence is required to meet the miscarriage-of-justice exception.  See Sweet, 125 F.3d at 1152 (citing Schlup, 513 U.S. at 316).  The Supreme Court, however, has limited the application of the actual innocence exception to the capital sentencing context.  See Dretke, 541 U.S. at 393.  In Dretke, the Court declined to extend the actual innocence exception to procedural default of constitutional claims challenging noncapital sentencing error.  Rather, the Court held "that a federal court faced with allegations of actual innocence, whether of the sentence or of the crime charged, must first address all nondefaulted claims for comparable relief and other grounds for cause to excuse the procedural default." Id. at 393-94.

In any case, a "'bare, conclusory assertion' that a petitioner is actually innocent is insufficient to excuse a procedural default."  Sweet, 125 F.3d at 1152 n.9 (citing Weeks v. Bowersox, 119 F.3d 1342, 1352-55 (8th Cir. 1997)).  To meet the requisite standard  for a probability of innocence a

habeas petitioner must show that "it is more likely than not that no reasonable juror would have convicted him in light of *new* evidence." Schlup, 513 U.S. at 327. (emphasis added). Evidence is "new" if it was "not available at trial and could not have been discoverable earlier through the exercise of due diligence." Amrine v. Bowersox, 238 F.3d 1023, 1029 (8th Cir. 2001).

It has been held that "novel circumstances and arguments" may constitute cause to excuse procedural default. McKinnon v. Lockhart, 921 F.2d 830, 833-34 (8th Cir. 1990). "[T]he Supreme Court [has] recognized that cause may exist when the claim raised is so novel that there was no reasonable basis to have asserted it at the time of a petitioner's state appeals." Id. at 833 (citing Reed v. Ross, 468 U.S. 1, 16 (1984)). However, "[if] the 'tools were available' for a petitioner to construct the legal argument at the time of the state appeals process, then the claim cannot be said to be so novel as to constitute cause for failing to raise it earlier." Id. (citing Leggins v. Lockhart, 822 F.2d 764, 766 (8th Cir. 1987)).

In regard to the "prejudice" component of "cause and prejudice," as discussed above, "actual prejudice" is required to overcome the procedural bar. Zinzer v. Iowa, 60 F.3d 1296, 1299 (8th Cir. 1995). "Prejudice, within the meaning of [the ineffective assistance of counsel standard of Strickland v. Washington, 466 U.S. 668 (1984)] occurs when appellate counsel's deficient performance renders the result of the direct appeal unreliable or fundamentally unfair." Id. The Eighth Circuit, however, holds that the "'prejudice' component of 'cause and prejudice' [necessary to excuse procedural default] is analytically distinct from the Strickland prejudice." Id. at 1299 n.7. The "'actual prejudice' required to overcome the procedural bar must be a higher standard than the Strickland prejudice required to establish the underlying claim for ineffective assistance of counsel." Id. (citing United States v. Frady, 456 U.S. 152, 165-68 (1982) (holding that to obtain habeas relief on a defaulted claim, a petitioner must clear a significantly higher hurdle than would exist on direct appeal).

Prior to considering the merits of a state petitioner's habeas claim, a federal court must determine whether the federal constitutional dimensions of the petitioner's claims were fairly presented to the state court. Smittie v. Lockhart, 843 F.2d 295, 296 (8th Cir. 1988). "If not, the federal court must determine if the exhaustion requirement has nonetheless been met because there are no 'currently available, non-futile remedies,' through which the petitioner can present his claim." Id. (citation omitted).

Additionally, § 2244(d)(1) establishes a 1-year limitation period on petitions filed pursuant to § 2254. Respondent argues that Petitioner's § 2254 Petition for habeas relief should be denied because it is untimely. The limitation period of § 2244(d)(1) runs from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

For a Missouri petitioner, a "judgment becomes final for purposes of appeal when the judgment and sentence are entered." State v. Holtze, 250 S.W.3d 745, 746 (Mo. Ct. App. 2008) (citing State v. Welch, 865 S.W.2d 434, 435 (Mo. Ct. App. 1993). An appeal must be filed within ten days thereafter. State ex rel. Wagner v. Ruddy, 582 S.W.2d 692, 693 (Mo. 1979) (en banc).

The Eighth Circuit holds that for Missouri prisoners who do not file for transfer to the

Missouri Supreme Court pursuant to Missouri Rules 83.01 and 83.04 "'the expiration of the time for seeking [direct] review' does not include the 90-day period for filing for certiorari" with the United States Supreme Court. Riddle v. Kemna, 523 F3d 850, 855 (8th Cir. 2008). Rather, the statute of limitations commences to run when a Missouri prisoner fails to file, fifteen days after the appellate court's decision, the first motion to transfer to the Missouri Supreme Court. "The AEDPA statute of limitations, however, does not begin then if the alternative trigger, 'conclusion of direct review,' occurs later." Under such circumstances the "conclusion of direct review for purposes of §2244(d)(1)(A)" occurs "when the Missouri Court of Appeals issues its mandate." Id. at 856-57 (holding that the statute of limitations period begins to run "the day after the direct-appeal mandate issued").

Section 2244(d)(2) states that "[t]he time during which a properly filed application for state post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this section." Thus, the statute provides that any additional period during which the statute is tolled is added to the one-year period. Peterson v. Gammon, 200 F.3d 1202, 1204 (8th Cir. 2000). While a properly filed state petition for post-conviction relief is pending the 1-year period of § 2244(d)(2) is tolled. Williams v. Bruton, 299 F.3d 981, 982 (8th Cir. 2002). The pivotal question arises, therefore, as to when an application for state post-conviction relief is pending. Id. "The term 'pending' includes the interval between the trial court's denial of postconviction relief and the timely filing of an appeal from the denial." Beery v. Ault, 312 F.3d 948, 950 (8th Cir. 2002) (citing Peterson, 200 F.3d at 1203). It is not "pending," however, "between the date direct review concludes and the date an application for state postconviction relief is filed." Id. (citing Painter v. Iowa, 247 F.3d 1255, 1256 (8th Cir. 2001)). For Missouri prisoners the statute does not commence to run until the appellate court issues the mandate.

Johnson v. Kemna, 451 F.3d 938, 939 (8th Cir. 2006) (holding that post-conviction proceedings in Missouri are not final until issuance of the mandate); Payne v. Kemna, 441 F.3d 570, 572 (8th Cir. 2006) ("Under Missouri state court procedures, [the petitioner's] post-conviction relief proceedings were not final until the issuance of the mandate.") ; Williams v. Bruton, 299 F.3d 981, 982-83 (8th Cir. 2002). Further, the statute is not tolled after the date the mandate issues on the appeal of a post-conviction relief motion whether or not the [Petitioner] files for certiorari with the United States Supreme Court. Lawrence v. Florida, 127 S.Ct. 1079, 1083 (2007) ("The application for state postconviction review is [] not 'pending' after the state court's postconviction review is complete, and § 2244(d)(2) does not toll the 1-year limitations period during the pendency of a petition for certiorari.").

Respondent argues that Petitioner did not raise the issue of Ground 2 before the Missouri appellate court and that, therefore, he has procedurally defaulted Ground 2. Ground 2 alleges trial court error regarding the admission, during the sentencing phase of Petitioner's trial, of a letter written by one of Petitioner's victims. Petitioner argues that his procedural default of Ground 2 should be excused because it was caused by "trial counsel's ineffectiveness in failing to object to the letter on constitutional grounds in order to preserve the issue for direct appeal." Doc. 18 at 26. As suggested by Respondent and as found by the Missouri appellate court, Petitioner did not properly raise the issue of Ground 2 before the Missouri appellate court; he raised this issue in the appeal of his post conviction relief motion, rather than in his direct appeal. Resp. Ex. M at 4. A federal claim, such as the claim of Petitioner's Ground 2, is defaulted if it was not properly presented to the State court. See Collier v. Norris, 485 F.3d 415, 425 (8th Cir. 2007). On the other hand, in regard to ineffectiveness of counsel as grounds to excuse procedural default, the Eighth Circuit has held that "[i]neffective assistance of trial or appellate counsel *may be* cause excusing a procedural default."

Williams v. Kemna, 311 F.3d 895, 897 (8th Cir. 2002) (emphasis added) (citing Murray v. Carrier, 477 U.S. 478, 491-92 (1986)). "However, in order to urge ineffective assistance as cause excusing a procedural default, the federal habeas petitioner must have properly raised the ineffectiveness claim in state court." Id. (citing Edwards v. Carpenter, 529 U.S. 446, 450-53 (2000); Tokar v. Bowersox, 198 F.3d 1039, 1051 n.13 (8th Cir.1999)). Petitioner, in the matter under consideration, alleged in the appeal of his post conviction relief motion that he was denied effective assistance of counsel because counsel failed to object to the reading of the victim's letter which is the subject of Petitioner's Ground 2. Resp. Ex. I at 18. The Missouri appellate court found that Petitioner's ineffective assistance of counsel claim was without merit. Resp. Ex. M at 6-7. As such, Petitioner cannot establish cause and prejudice to excuse his procedural default of Ground 2. See Interiano v. Dormire, 471 F.3d 854, 857 (8th Cir. 2006); Zeitvogel v. Delo, 84 F.3d 276, 279 (8th Cir. 1996) ("[T]he mere fact that counsel failed to recognized the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for procedural default."). Nonetheless, in the interest of justice, the court will address Ground 2 on its merits.

Respondent also argues that Petitioner's § 2254 Petition is untimely and suggests that the statute of limitations ran while Petitioner's direct appeal was transferred to the Missouri Supreme Court. Petitioner contends that his § 2254 Petition is timely. In support of his position, Petitioner argues that Respondent suggests an "imaginative statute of limitation defense"; that Petitioner could not have filed a writ of certiorari to seek review of the Missouri Supreme Court's Rule 83.09 order on December 20, 2005, because there was no existing judgment until the Missouri Court of Appeals reissued its opinion on February 23, 2006; that the statute was tolled during the entire time Petitioner's post-conviction relief motion was pending; that the statute commenced running upon the

issuance of the mandate on Petitioner's Rule 29.15 appeal; and that, therefore, Petitioner's § 2254 Petition is timely.

In Petitioner's case the 1-year statute of limitations commenced running on March 2, 2006, which is fifteen days after the Missouri appellate court issued its final decision on Petitioner's direct appeal. To the extent Petitioner argues that the statute did not run during the period he could have filed for a writ of certiorari on his direct appeal, he is incorrect; the statute commenced running either on the date the mandate issued or fifteen days after the Missouri appellate court issued its decision. In Petitioner's case, because the mandate issued prior to the expiration of fifteen days, the statute did not commence to run until fifteen days from February 15, 2006, the date the Missouri appellate court reinstated its original opinion. See Riddle, 523 F3d at 855-57. As such, the statute ran from March 3, 2006, until May 15, 2006, the date Petitioner filed his pro se post conviction relief motion, which period was seventy-three days. The statute was then tolled from May 15, 2006, until October 6, 2008, the date the mandate issued on the appeal of his post conviction relief motion. The 1-year statute then ran from October 6, 2008, for 355 days until Petitioner filed his § 2254 Petition in this court on September 29, 2009. The court finds, therefore, that Petitioner's § 2254 Petition is untimely. In the interest of justice, however, the court will consider Grounds 1, 2, 3, and 4 on their merits, despite the untimeliness of Petitioner's § 2254 Petition.

### III.
### STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254 ("AEDPA"), applies to all petitions for habeas relief filed by state prisoners after this statute's effective date of April 24, 1996. Lindh v. Murphy, 521 U.S. 320, 326-29 (1997). In conducting habeas review pursuant to § 2254 a federal court is limited to deciding whether decisions of state courts were "contrary to, or involved an unreasonable application of, clearly established Federal law, as

determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). "'Federal law, as determined by the Supreme Court,' refers to 'the holdings, as opposed to the dicta, of [the Supreme] Court's decisions.'" Evenstad v. Carlson, 470 F.3d 777, 782-83 (8th Cir. 2006) (quoting Williams v. Taylor, 529 U.S. 362, 412 (2000)). To obtain habeas relief, a habeas petitioner must be able to point to the Supreme Court precedent which he thinks the state courts acted contrary to or applied unreasonably. Id. at 283 (citing Buchheit v. Norris, 459 F.3d 849, 853 (8th Cir. 2006); Owsley v. Bowersox, 234 F.3d 1055, 1057 (8th Cir. 2000)). Thus, where there is no federal law on a point raised by a habeas petitioner, a federal court cannot conclude either that a state court decision is "'contrary to, or involved an unreasonable application of, clearly established Federal law' under 28 U.S.C. §2254(d)(1)." Id. at 784. "When federal circuits disagree as to a point of law, the law cannot be considered 'clearly established' under 28 U.S.C. § 2254(d)(1). Id. at 783 (citing Tunstall v. Hopkins, 306 F.3d 601, 611 (8th Cir. 2002)). See also Carter v. Kemna, 255 F.3d 589, 592 (8th Cir. 2001) (holding that in the absence of controlling Supreme Court precedent, a federal court cannot reverse a state court decision even though it believes the state court's decision is "possibly incorrect").

In Williams v. Taylor, 529 U.S. 362 (2000), the United States Supreme Court set forth the requirements for federal courts to grant writs of habeas corpus to state prisoners under § 2254. The Court held that "§2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for writ of habeas corpus with respect to claims adjudicated on the merits in the state court." Id. at 412. The Court further held that the writ of habeas corpus may issue only if the state-court adjudication resulted in a decision that:

> (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal Law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that

reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams, 529 U.S. at 412-13.

Williams further holds that the writ will not issue merely because the federal court concludes that the relevant state court decision erroneously or incorrectly applied clearly established federal law. See id. at 411. "'Rather [the] application [by the state-court] must also be unreasonable.'" Copeland v. Washington, 232 F.3d 969, 973 (8th Cir. 2000) (quoting Williams, 529 U.S. at 411). See also Siers v. Weber, 259 F.3d 969, 973 (8th Cir. 2001).

The Court further explained in Williams that for a state-court decision to satisfy the "contrary to" prong of § 2254(d)(1), the state court must apply a rule that "contradicts the governing law as set forth in [Supreme Court] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Court's] precedent." 529 U.S. at 406. See also Price v. Vincent, 538 U.S. 634, 640 (2003). It is not necessary for a state-court decision to cite, or even be aware of, applicable federal law, "so long as neither the reasoning nor the result of the state-court decision contradicts" federal law. Early v. Packer, 537 U.S. 3, 8 (2002).

For a state court decision to satisfy the "unreasonable application" prong of § 2254(d)(1), the state court decision must "identif[y] the correct governing legal principle from [the Supreme] Court's decisions but unreasonably appl[y] that principle to the facts of [a] prisoner's case." Williams, 529 U.S. at 413. See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001). Upon explaining § 2254's legal standard, the Supreme Court held in Penry that "even if the federal habeas court concludes that the

15

state court decision applied clearly established federal law incorrectly, relief is appropriate only if that application is also objectively unreasonable." Id. at 793 (citing Williams, 529 U.S. at 410-11). The Eighth Circuit has held that "[t]o the extent that 'inferior' federal courts have decided factually similar cases, reference to those decisions is appropriate in assessing the reasonableness of the state court's resolution of the disputed issue." Atley v. Ault, 191 F.3d 865, 871 (8th Cir. 1999).

Additionally, § 2254(d)(2) provides that an application for writ of habeas corpus should not be granted unless the adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." Further, pursuant to § 2254(e)(1), "[a] state court's determination on the merits of a factual issue is entitled to a presumption of correctness." Boyd v. Minnesota, 274 F.3d 497, 500 (8th Cir. 2001). The state court's factual determinations "must be rebutted by clear and convincing evidence." King v. Kemna, 266 F.3d 816, 822 (8th Cir. 2001). For purposes of federal habeas relief, the state court decision involves an unreasonable determination of the facts in light of the evidence presented in state court proceedings "only if it is shown by clear and convincing evidence that the state court's presumptively correct factual findings do not enjoy support in the record." Lomholt v. Iowa, 327 F.3d 748, 752 (8th Cir. 2003). See also Jones v. Luebbers, 359 F.3d 1005, 1011 (8th Cir. 2004) ("[A] state court decision involves 'an unreasonable determination of the facts in light of the evidence presented in the state court proceedings,' 28 U.S.C. § 2254(d)(2), only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record. 28 U.S.C. § 2254(e)(1)."), cert. denied, 543 U.S. 1027 (2004).

The United States Supreme Court has defined the circumstances under which a state court reasonably applied federal law as follows:

> At the same time, the range of reasonable judgment can depend in part on the nature of the relevant rule. If a legal rule is specific, the range may be narrow.

Applications of the rule may be plainly correct or incorrect. Other rules are more general, and their meaning must emerge in application over the course of time. Applying a general standard to a specific case can demand a substantial element of judgment. As a result, evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case by case determinations. Cf. Wright v. West, 505 U.S. 277, 308-309, 112 S.Ct. 2482, 120 L.Ed.2d 225 (1992) (KENNEDY, J., concurring in judgment).

Yarborough v. Alvarado, 541 U.S. 652, 644 (2004).

The Eighth Circuit has addressed the issue of how to determine whether a state court has addressed a claim on its merits so that the AEDPA standard of review applies. Brown v. Luebbers, 371 F.3d 458 (8th Cir. 2004). The court held in Brown that:

> [W]hat constitutes an adjudication on the merits? From the plain language of the statute and black-letter law, we know that the state court's decision must be a judgment--an adjudication--on a substantive issue--the merits (as compared with a procedural or technical point). A survey of opinions from our sister circuits demonstrates that, beyond these two considerations, resolving the question is not so easy. One thing is clear--no court has established bright-line rules about how much a state court must say or the language it must use to compel a § 2254 court's conclusion that the state court has adjudicated a claim on the merits. That is as it should be, given one court's difficulty in divining the thought processes of another based only on language being used in certain ways, not to mention the comity issues that would be raised. Cf. Coleman v. Thompson, 501 U.S. 722, 739, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991) (noting in discussion of procedural default in state habeas cases that the Court has "no power to tell state courts how they must write their opinions" so that reviewing "federal courts might not be bothered with reviewing state law and the record in the case"). We must simply look at what a state court has said, case by case, and determine whether the federal constitutional claim was considered and rejected by that court.

Id. at 461.

Even where the bulk of a state court decision is "devoted to the state-law evidentiary question and whether 'the trial court abused its discretion' in excluding [evidence]," the Eighth Circuit has held that the "'summary nature' of the discussion of the federal constitutional question

does not preclude application of the AEDPA standard." Id. at 462 (citing James v. Bowersox, 187 F.3d 866, 869 (8th Cir. 1999)). The court further held in Brown that:

> [It] is not to say that citation to law and a key word from the application of that law--or anything else--is required for us to determine that the claim was adjudicated on the merits. We only hold that they suffice in this case for us to conclude that the Missouri Supreme Court's decision on this claim was an adjudication on the merits.

Id.

Where a federal constitutional question, however, is not adjudicated on its merits in state court proceedings, it is not appropriate for a federal court to apply the standard of § 2254 as amended by the AEDPA because there is no apparent state-court adjudication to which this standard can be applied. Robinson v. Crist, 278 F.3d 862, 865 (8th Cir. 2002) ("[B]ecause this claim apparently was not adjudicated by the [state] court, we likely should apply the pre-AEDPA standard of review."). Under the pre-AEDPA standard a habeas petitioner must demonstrate a "'reasonable probability that the error complained of affected the outcome of the trial,' or that the verdict likely would have been different absent the now-challenged [error]." Id. at 865-66 (quoting Hamilton v. Nix, 809 F.2d 463, 470 (8th Cir.1987) (en banc)).

## III
## STANDARD FOR INEFFECTIVE ASSISTANCE OF COUNSEL

Federal law provides that to prove ineffective assistance of counsel, a habeas petitioner must show that: "(1) his counsel so grievously erred as to not function as the counsel guaranteed by the Sixth Amendment; and (2) his counsel's deficient performance prejudiced his defense." Auman v. United States, 67 F.3d 157, 162 (8th Cir. 1995) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). The "performance" prong of Strickland requires a showing that "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of

reasonable professional judgment." Id. at 690. To overcome this presumption, a petitioner must prove that, "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Id.

Even if a petitioner satisfies the performance component of the analysis, he is not entitled to relief unless he can prove sufficient prejudice. Id. at 697. To do so, a petitioner must prove that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 669. The court is not required to "address both components of the [effective assistance of counsel] inquiry if [a petitioner] makes an insufficient showing on one [component]." Id. at 697.

Additionally, the court notes that the Court stated in Strickland, 466 U.S. at 688-89, that:

> In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances. Prevailing norms of practice as reflected in the American Bar Association standards and the like, e.g., ABA Standards for Criminal Justice 4-1.1 to 4-8.6 (2d ed. 1980) ("The Defense Function"), are guides to determining what is reasonable, but they are only guides. No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant. Any such set of rules would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions. (citation omitted). ...

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. (citation omitted). A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." (citation omitted). There are countless ways to provide effective assistance in any given case. Even the

best criminal defense attorneys would not defend a particular client in the same way. (citation omitted).

**IV.**
**DISCUSSION**

**Ground 1 - The trial court erred when it restricted Petitioner's use of the victim's prior false allegations:**

Respondent contends that Ground 1 is not cognizable pursuant to federal habeas review because it challenges a State court evidentiary ruling and, alternatively, that it is without merit. In support of Ground 1, Petitioner argues that because this claim involves the restriction of cross-examination it raises a federal claim; that he was denied his right to present exculpatory evidence by the trial court's restriction of his use of the victim's prior statements; that this court should review the issue of Ground 1 de novo because the State court reviewed it on State grounds; and that the trial court erred in regard to its restricting Petitioner's use of the victim's prior allegations. Doc. 18 at 23-26.

Upon addressing the issue of Petitioner's Ground 1, the Missouri appellate court held:[6]

---

[6]     The Missouri appellate court considered the issue of Petitioner's Ground 1 pursuant to plain error review because Petitioner did not properly preserve this issue for appeal. Authority within the Eighth Circuit is mixed in regard to whether a state prisoner can raise a claim pursuant to a § 2254 petition which has only been reviewed by the state court for plain error. The Eighth Circuit acknowledged in Hornbuckle v. Groose that "'[t]here appears to be a decisional split within our Circuit on whether plain-error review by a state appellate court waives a procedural default by a habeas petitioner, allowing collateral review by this court.'" 106 F.3d 253, 257 (8th Cir. 1997) (quoting Mack v. Caspari, 92 F.3d 637, 641 n.6 (8th Cir. 1996)). In Hornbuckle, 106 F.3d at 257, the Eighth Circuit chose to follow cases holding that where Missouri courts review procedurally defaulted claims of a habeas petitioner for plain error, the federal habeas court may likewise review for plain error. In Thomas v. Bowersox, 208 F.3d 699, 701 (8th Cir. 2000), the Eighth Circuit addressed the merits of a habeas petitioner's claim where the state court had reviewed the claim for plain error. More recently, however, in Evans v. Luebbers, 371 F.3d 438, 443 (8th Cir. 2004), the Eighth Circuit stated that a habeas claim was procedurally defaulted "notwithstanding the fact that the Missouri Court of Appeals reviewed the claim for plain error."

Defendant alleges that he suffered a deprivation of his constitutional rights when, during his cross-examination of [T.W.], defense counsel sought to introduce extrinsic evidence to establish that [T.W.] made false allegations to the police or DFS when an authority figure angered her. Defendant contends that although the trial court permitted some questions regarding whether [T.W.] made accusations against family members in the past, the trial court refused to allow testimony regarding whether those allegations were true or false, unless the alleged false allegations involved sexual misconduct. Specifically, the trial court discussed the issue with counsel as follows:

> THE COURT: ... [Y]ou may explore the relationships within the family and you may inquire about ... whether this witness made certain accusations or whether she did certain things in response to direction from a family member, but understand, [defense counsel], you're going to be bound by her answer, because I'm not going to allow you to bring in a bunch of collateral testimony on issues that are totally unrelated to her and the defendant.
>
> Now, you're entitled to bring in character testimony, reputation for truth and veracity testimony, but I'm not going to sit here and have a bunch of family members come in and say, "Yeah, she called DFS on me because I told her to take out a nose ring." That's collateral.
>
> [DEFENSE COUNSEL]: Isn't that evidence of her character?
>
> THE COURT: Character evidence is the opinion of the person and the reputation of the person for truth and veracity, not specific evidence-not some laundry list of specific incidents that has nothing to do with the defendant or any offense on trial.
>
> Now, that's my understanding, so you may cross-examine this witness and you may ask her about whether she's made accusations in the past against family members, but I'm not going to entertain testimony about whether those accusations are true or false, unless they're accusations of sexual misconduct.
>
> THE STATE: And, Your Honor, I would ask that those questions be limited in time to the period of time in which she first alleged that there was sexual contact, to the period of time that she actually disclosed it to authorities.

THE COURT: I agree.

Reeder, 182 S.W.3d at 574-75.

As further stated by the Missouri appellate court, "[u]ltimately, the court determined that defense counsel could not cross-examine the witnesses regarding any non-sexual prior allegations that occurred after the Fall of 2000." Id. at 575 n.1. The Missouri appellate court continued to find as follows in regard to the issue of Petitioner's Ground 1:

> Defendant asserts that this case is governed by State v. Long, 140 S.W.3d 27 (Mo. banc 2004), decided while this case was pending on appeal. In Long, a victim alleged that the defendant beat and sexually assaulted her. There was no physical evidence linking the defendant to the alleged sexual assault. The trial court prohibited the defendant from introducing extrinsic evidence to establish that the victim made prior false allegations against other individuals. The defendant appealed alleging that the excluded evidence was central to his defense.
>
> Acknowledging the existing evidentiary rule that prior acts may not be proven by extrinsic evidence, the Court nevertheless concluded that "[w]here ... a witness' credibility is a key factor in determining guilt or acquittal, excluding extrinsic evidence of the witnesses' prior false allegations deprives the fact-finder of evidence that is highly relevant to a crucial issue directly in controversy; the credibility of the witness." Long, 140 S.W.3d at 30-31. Accordingly, the Supreme Court reversed and remanded for a new trial, holding that "excluding evidence of prior false allegations was prejudicial because [the defendant] was deprived of a full opportunity to present his defense that the witness was fabricating the present allegations against him." Id. at 32. Rejecting the notion that, in order to be admissible, the extrinsic evidence must relate to a prior, false allegation of another rape or sexual assault, the Supreme Court clarified that, "[t]he relevance of the prior false allegation is thus derived primarily from the fact that the allegation was false and not entirely from the subject matter of the prior false allegation." Id. at 31.
>
> As an initial matter, we determine whether the new evidentiary rule announced in Long is retrospective or prospective in application. State v. Walker, 616 S.W.2d 48, 49 (Mo. banc 1981). In Walker, the Supreme Court articulated the standard for determining whether a decision creating a new rule applies retrospectively or prospectively, when it considered whether State v. Biddle, 599 S.W.2d 182 (Mo. banc 1980), handed down during the pendency of the Walker defendant's appeal, which rendered polygraph examinations inadmissible in criminal trials, applied retroactively or prospectively. Acknowledging that Biddle changed the law in Missouri, the Court stated that where "the Court fails to indicate in the decision creating the new rule whether that rule is to be applied retrospectively or prospectively, then this

determination hinges on whether the new rule of law is procedural or substantive." Walker, 616 S.W.2d at 49.

Furthermore, the Court held that if the new rule is substantive, it applies both retrospectively and prospectively. Id. By contrast, if the new rule is procedural, its effect is prospective only. Id. Because rules of evidence are procedural in nature and apply prospectively, the Court ultimately held that the rule created in Biddle warranted only prospective application. Walker, 616 S.W.2d at 49; see also State v. Reasonover, 714 S.W.2d 706, 720 (Mo. App. E.D.1986) (rule in subsequent Supreme Court decision which found post-hypnotic testimony to be inadmissible was a procedural rule dealing with the admissibility of evidence and therefore applied prospectively.)

In the Long decision, as in Biddle, the Supreme Court did not state whether the new rule should apply retrospectively. We thus determine whether the new rule articulated in Long is procedural or substantive. Because the new rule governs the admissibility of evidence, it is, as the Court held in Walker, procedural. Accordingly, it appears that we are required to apply Long prospectively only. Because the trial court properly applied the rule of evidence existing at the time of trial, the trial court did not err. Point denied.

Id. at 575-76.

Petitioner's counsel was permitted to cross examine the victims about whether they had previously accused other men of sexual misconduct. Resp. Ex. D at 159-60, 173, 295-96. Petitioner's counsel was also permitted to ask T.W. whether she had accused her mother of dealing drugs and whether she had ever called the police or the Division of Family Services on her mother. Resp. Ex. D at 160-61. Indeed, upon being called to testify by Plaintiff's counsel, T.W.'s mother testified that T.W. had made false accusations against her to the police; that there had been an investigation by Family Services regarding allegations made by T.W.; that T.W. had accused several men of rape; that T.W. later admitted that allegations against three of the men she accused were false; that Petitioner helped her run-off young men who hung around her house to visit T.W., L.W., and M.O.; and that the girls were angry at Petitioner and would tell lies about him. Resp. Ex. D at 327-

36, 342-44.  Thus, Petitioner was afforded the opportunity to present exculpatory evidence, and he did so.

The United States Supreme Court  held in Estelle v. McGuire that "'federal habeas corpus relief does not lie for errors of state law'" and that "it is not province of a federal habeas court to reexamine state-court determinations on state-law questions." 502 U.S. 62, 67-68 (1991) (quoting Lewis v. Jeffers, 497 U.S. 764, 780 (1990) and citing Pulley v. Harris, 465 U.S. 37, 41 (1984)).  The Court further held that "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Id. at 68 (citing 28 U.S.C. § 2241; Rose v. Hodges, 423 U.S. 19, 21 (1975) (per curiam )).  Because the admission or exclusion of evidence is primarily a question of state law, an evidentiary determination rarely gives rise to a federal question reviewable in a habeas petition. Scott v. Jones, 915 F.2d 1188, 1190-91 (8th Cir. 1990).  Federal courts "may not review evidentiary rulings of state courts unless they implicate federal constitutional rights." Evans v. Luebbers, 371 F.3d 438, 443 (8th Cir. 2004), cert. denied, 543 U.S. 1067 (2005) (citing Estelle, 502 U.S. at 68); Anderson v. Goeke, 44 F.3d 675, 679 (8th Cir. 1995); Rainer v. Dep't of Corr., 914 F.2d 1067, 1072 (8th Cir. 1990).  See also Abdi v. Hatch, 450 F.3d 334, 338 (8th Cir. 2006) ("The admission of evidence at a state trial provides a basis for federal habeas relief when the 'evidentiary ruling infringes upon a specific constitutional protection or is so prejudicial that it amounts to a denial of due process.'") (quoting Turner v. Armontrout, 845 F.2d 165, 169 (8th Cir.1988)); Sweet  v. Delo, 125 F.3d 1144, 1157-58 (8th Cir. 1997) (holding that the exclusion of evidence violates due process if "the asserted error was 'so conspicuously prejudicial or of such magnitude that it fatally infected the trial and deprived [the petitioner] of fundamental fairness'") (quoting Logan v. Lockhart, 994 F.2d 1324, 1330 (8th Cir. 1993)); Mercer v. Armontrout, 844 F.2d 582, 587 (8th Cir. 1988) (holding that to justify the grant of habeas corpus, the error must

be "so 'gross'... 'conspicuously prejudicial'... or otherwise of such magnitude that it fatally infected the trial and failed to afford [petitioner] the fundamental fairness which is the essence of due process"); Manning-El v. Wyrick, 738 F.2d 321, 322 (8th Cir. 1984) (holding that questions concerning admissibility of evidence are matters of state law and are not reviewable in a federal corpus proceeding unless the asserted error infringed a specific constitutional protection or was so prejudicial as to deny due process); Logan v. Lockhart, 994 F.2d 1324, 1330 (8th Cir. 1993) ("Questions regarding admissibility of evidence are matters of state law, and they are reviewed in federal habeas inquiries only to determine whether an alleged error infringes upon a specific constitutional protection or is so prejudicial as to be a denial of due process.").

The Eighth Circuit held in Anderson v. Goeke, 44 F.3d 675, 679 (8th Cir. 1995), in regard to § 2254 review by a federal court:

> [W]e will reverse a state court evidentiary ruling only if the "petitioner ⋯ show[s] that the alleged improprieties were 'so egregious that they fatally infected the proceedings and rendered his entire trial fundamentally unfair.' To carry that burden, the petitioner must show that there is a reasonable probability that the error complained of affected the outcome of the trial-i.e., that absent the alleged impropriety the verdict probably would have been different." [Hamilton v. Nix, 809 F.2d 463, 470 (8th Cir. 1987)] (citations omitted). ... Of particular importance is the frequency and pervasiveness of the alleged misconduct in the context of the entire trial, the weight of the evidence supporting guilt, and whether the trial judge gave a cautionary instruction to the jury on how to properly use the testimony elicited. Hamilton, 809 F.2d at 470. Cf. United States v. Jackson, 41 F.3d 1231, 1233 (8th Cir.1994) (detailing this three-part inquiry for claims of prosecutorial misconduct on direct appeal).

In any case, under federal law, "the admission of evidence is a matter of discretion for the trial court, and the trial court's determination that evidence is relevant and that its probative value outweighs the danger of unfair prejudice will not be reversed on appeal unless the trial court has abused that discretion." United States v. Macklin, 104 F.3d 1046, 1048 (8th Cir. 1997) (citing United States v. Delpit, 94 F.3d 1134, 1146 (8th Cir. 1996); United States v. Just, 74 F.3d 902, 904 (8th Cir.

1996)). Even where admission of evidence is erroneous, such admission does not necessarily fatally infect a trial. See e.g., Kuntzelman v. Black, 774 F.2d 291, 292 (8th Cir. 1985) (per curiam) (finding no error of constitutional magnitude in the admission of "particularly gruesome" photographs where the photographs "were at least arguably relevant and probative in showing the identity and condition of the deceased, the location of the wound, and the intent of [the petitioner] in firing the shot that killed [the victim]").

Further, the Eighth Circuit has held that "[r]ulings on the admission or exclusion of evidence in state trials rarely rise to the level of a federal constitutional violation. '[O]nly the exclusion of critical, reliable and highly probative evidence will violate due process.'" Nebinger v. Ault, 208 F.3d 695, 697 (8th Cir. 2000) (quoting Sweet v. Delo, 125 F.3d 1144, 1158 (8th Cir.1997). "The admission of evidence at a state trial provides a basis for federal habeas relief when the 'evidentiary ruling infringes upon a specific constitutional protection or is so prejudicial that it amounts to a denial of due process.'" Abdi v. Hatch, 450 F.3d 334, 338 (8th Cir. 2006) (quoting Turner v. Armontrout, 845 F.2d 165, 169 (8th Cir. 1988)).

Upon considering the issue of Petitioner's Ground 1, the Missouri appellate court considered whether Long, 140 S.W.3d 27, upon which Petitioner relied, should be retroactively applied to Petitioner. The Missouri appellate court concluded that because Long's holding regarding the admission of a witnesses prior false allegations was procedural, and not substantive, that Long should not be applied retroactively. Federal law provides that the retroactivity of a State change in law is a State question and not a question which implicates a federal constitutional right, as the "federal Constitution has no voice upon the subject." LaRue v. McCarthy, 833 F.2d 140, 142 (9th Cir. 1987) (citation omitted). Furthermore, in regard to a claim that due process is violated where a state court refused to retroactively apply a state court decision, a federal court has noted that the Supreme Court

has held that "'the federal constitution has no voice upon the subject' of retroactivity." <u>Warren v. Kyler</u>, 422 F.3d 132, 136 (3rd Cir. 2005) (quoting <u>Great N. Ry. Co. v. Sunburst Oil & Ref. Co.</u>, 287 U.S. 358, 364 (1932)). As such, the court finds that Petitioner's Ground 1 is not cognizable pursuant to federal habeas review. <u>See</u> <u>Estelle</u>, 502 U.S. at 68; <u>Warren</u>, 422 F.3d at 136; <u>Evans</u>, 371 F.3d at 443; <u>Scott</u>, 915 F.2d at 1190-91; <u>LaRue</u>, 833 F.2d at 142.

Moreover, under federal law:

> When a Supreme Court decision results in a "new rule" of criminal procedure, that rule applies to all criminal cases still pending on direct review, but, as to convictions that are already final, the rule applies only in limited circumstances. <u>See</u> <u>Schriro v. Summerlin</u>, 542 U.S. 348, 124 S.Ct. 2519, 2522, 159 L.Ed.2d 442 (2004). New substantive rules-which narrow the scope of a criminal statute or which place particular conduct or persons covered by the statute beyond the State's power to punish-generally apply retroactively. <u>See</u> <u>id.</u> at 2522-23. New procedural rules generally do not apply retroactively unless the rule is of "watershed" magnitude implicating "the fundamental fairness and accuracy of the criminal proceeding," or unless the rule prevents the lawmaking authority from criminalizing certain kinds of conduct. <u>See</u> <u>id.</u> at 2523, 542 U.S. 348; <u>Teague v. Lane</u>, 489 U.S. 288, 310-11, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) (unless exception applies, new constitutional rules of criminal procedure will not be applicable to those cases which have become final before new rules are announced; exceptions are for rules that (1) place conduct beyond power of criminal law-making body to proscribe or (2) are "watershed rules of criminal procedure"); <u>United States v. Moss</u>, 252 F.3d 993, 997 & n. 3 (8th Cir.2001).

<u>Never Misses A Shot v. United States</u>, 413 F.3d 781, 783 (8th Cir. 2005).

The law articulated in <u>Long</u> neither placed conduct beyond the power of a criminal law-making body to proscribe nor created a "watershed" rule of criminal procedure. As such, applying federal law, the Missouri appellate court properly held that <u>Long</u> should not be applied retroactively. <u>See</u> <u>id.</u> In any case, the court finds, alternatively, that the decision of the Missouri appellate court in regard to the issue of Petitioner's Ground 1 is not contrary to federal law and that it is a reasonable application of federal law. <u>See</u> <u>Never Misses A Shot</u>, 413 F.3d at 783. The court also finds that the Missouri appellate court's decision in regard to the issue of Petitioner's Ground 1 is a reasonable

determination of the facts in light of the evidence presented at his trial. <u>See</u> § 2254(d)(2). The court further finds that Petitioner's Ground 1 is without merit and that habeas relief on its basis should be denied.

**Ground 2 - The trial court erred during the sentencing phase by admitting the contents of a letter written by one of the victims:**

In support of Ground 2 Petitioner argues that because the letter at issue "contained materially false evidence, a due process violation [] occurred." Doc. 18 at 27. Petitioner further argues that the letter from the victim suggested that Petitioner had previously been accused of statutory rape; that Petitioner had no such convictions and "had never before been charged, jailed, or convicted of any sexual offense involving an underage girl"; and that statements in T.W.'s letter "is contradicted by her prior sworn testimony." Doc. 18 at 28. Petitioner contends that he was prejudiced as a result of the letter's being read. Doc. 18 at 28-29.

The sentencing range available to the jury in Petitioner's case was five years to life on the statutory rape charges. Resp. Ex. C at 62-63. The jury recommended a ten year sentence on two of the statutory rape charges and fifteen years on the third statutory rape charge. Resp. Ex. C at 70-71, 73. The sentencing range available to the jury on the charge of attempted child molestation was no less than one year and no more than seven years. Resp. Ex C at 62-63. The jury recommended a three year sentence Resp. Ex. C at 72. The trial court accepted the jury's recommendation, and ordered that Petitioner's ten and three-year sentences run concurrent with one another and that the fifteen year sentence run consecutive to those sentences, for a total of twenty-five years.

T.W., wrote a letter to the court which the prosecutor read during Petitioner's sentencing proceedings. The letter stated:

> My name is [T.W.]. I'm writing to express my feelings to you. I lost my virginity a long time ago because of my own uncle. I was hoping to go through my life as a virgin until my marriage, which is after college. Now I have to go through my

life knowing my plan in life was ruined by him. I wish I would never have met him. I'm just glad that it is all over now. I feel so much safer while he is gone.

I also wish my grandma would believe me. He has been put in jail before for the same reason and she didn't believe it then either. At least I know my real family is on my side. It really means a lot to me, knowing that they are sticking with me this whole way through, especially my aunt and my mom.

I hope I never see Ronnie Reeder again, and I'm going to make the best of what's left of my life. Thanks for your help and time.

Sincerely, [T.W.].

Resp. Ex. D at 418-419.

In his opening statement, during the sentencing phase of Petitioner's trial, Petitioner's attorney explained that Petitioner was going to testify that he had no prior convictions; that, when he was first taken into custody, in May 2002, he spent time at the Workhouse; that he went to the Justice Center in January or February; that, while there, he spent twenty-three hours a day locked in his cell because he was in protective custody; and that the reason the jury would hear this testimony was because Petitioner's punishment had already begun, because he had been "punished for this offense for quite sometime now," and because the time Petitioner had been in custody had been "hard time." Resp. Ex. D, Trial Transcript ("Tr.") at 417-18. Indeed, Petitioner testified, during the sentencing phase, that he was first charged in T.W.'s case; that he was "locked up" in 2002; that he "did time at the Workhouse"; that he "made bond after [T.W.'s] case"; that he was brought to the Justice Center when it was opened; and that he was put in protective custody where he was "locked down" twenty-three hours a day. Resp. Ex. D, Tr. at 428-30. Petitioner testified further regarding the conditions of his confinement. It was established, pursuant to cross-examination, when and why Petitioner had been in jail. In particular, Petitioner testified that, while he was on bond in T.W.'s case, he "became aware that there were going to be additional charges with respect to [M.O.]"; that he "voluntarily did not come to court on [T.W.'s] case because [he] knew that [he] had additional charges pending

against [him] that [he] had not yet been taken into custody on"; and that he was taken into custody because he had not come to court. Resp. Ex. D, Tr. at 432-34.

In the appeal of his post conviction relief motion, Petitioner's first point was that the trial court erred by admitting that aspect of T.W.'s letter which stated that Petitioner had "been put in jail before for the same reason." Petitioner argued that this aspect of the letter should not have been admissible because it was inadmissable hearsay, because it violated Petitioner's right to confrontation, and because it violated his due process rights. The Missouri appellate court denied Petitioner's first point because this issue should have been raised on direct appeal. Resp. Ex. M at 3. As to his second point in the appeal of his post conviction relief motion, Petitioner argued that he was denied effective assistance of counsel because counsel failed to object when the prosecutor read the letter to the jury. This second issue is raised by Petitioner as Ground 3, before this court, and is discussed below.

In regard to Petitioner's contention that his right to confrontation of a witness was violated because he did not have the opportunity to cross examine T.W. regarding her letter, federal law provides that the Confrontation Clause does not apply to sentencing proceedings in non-capital cases. United States v. Johnson, 495 F.3d 951, 976 n.23 (8th Cir. 2007); United States v. Wallace, 408 F.3d 1046, 1048 (8th Cir. 2005) ("As long as the out-of-court information relative to the circumstances of the crime bears an indicia of reliability, then the sentencing court can consider it without providing the defendant with a right to confrontation.") (citing United States v. Atkins, 250 F.3d 1203, 1212-13 (8th Cir. 2001) (noting that the sentencing court has wide discretion as to the kind of information considered or its source).

Additionally, the Eighth Circuit has held:

As a "general proposition, a sentencing judge may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come." Nichols v. United States, 511 U.S. 738, 747, 114 S.Ct. 1921, 128 L.Ed.2d 745 (1994) (quotations omitted). The commentary in

the Sentencing Guidelines expressly allows reliable hearsay evidence at sentencing, and courts have concluded hearsay is admissible in sentencing as long as it bears some indicia of reliability. United States v. Shevi, 345 F.3d 675, 679 (8th Cir.2003) (reliable hearsay evidence may be considered at sentencing) ... .

United States v. Wallace, 408 F.3d 1046, 1047-48 (8th Cir. 2005).

Mo. Rev. Stat. § 557.036 provides, in relevant part, if the defendant has no prior convictions, that:

> 2. Where an offense is submitted to the jury, the trial shall proceed in two stages. At the first stage, the jury shall decide only whether the defendant is guilty or not guilty of any submitted offense. The issue of punishment shall not be submitted to the jury at the first stage.

> 3. If the jury at the first stage of a trial finds the defendant guilty of the submitted offense, the second stage of the trial shall proceed. The issue at the second stage of the trial shall be the punishment to be assessed and declared. Evidence supporting or mitigating punishment may be presented. *Such evidence may include, within the discretion of the court, evidence concerning the impact of the crime upon the victim*, the victim's family and others, the nature and circumstances of the offense, and the history and character of the defendant. ... The court shall instruct the jury as to the range of punishment authorized by statute for each submitted offense. The attorneys may argue the issue of punishment to the jury, and the state shall have the right to open and close the argument. The jury shall assess and declare the punishment as authorized by statute.

> ...

> 5. If the jury returns a verdict of guilty in the first stage and declares a term of imprisonment in the second stage, the court shall proceed as provided in subsection 1 of this section except that any term of imprisonment imposed cannot exceed the term declared by the jury unless the term declared by the jury is less than the authorized lowest term for the offense, in which event the court cannot impose a term of imprisonment greater than the lowest term provided for the offense.

(emphasis added).

First, the court notes that sentencing proceedings, in Petitioner's case, were conducted in accordance with the requirements of Mo. Rev. Stat. § 557.036. Secondly, to the extent it can be argued that federal law applied, federal law provides that a broad scope of information may be

considered by a sentencing court, including hearsay evidence. Thus, the jury and/or the court could have properly considered T.W.'s victim impact statement, despite Petitioner's being unable to cross examine her on its content. Third, to the extent that T.W. incorrectly suggested, in her letter, that Petitioner had "been put in jail before for the same reason," Petitioner clarified any ambiguity in this regard by his testimony about the circumstances of his being on bond and his subsequently being taken into custody and spending time in jail for the charges against him in the matter under consideration. Fourth, there is no suggestion that the court, upon adopting the recommendation of the jury, relied on T.W.'s statement that Petitioner had been "put in jail before for the same reason." Fifth, the court specifically instructed the jurors, when considering Petitioner's sentence, to consider all the evidence presented to them. Resp. Ex. C at 65.

Therefore, pursuant to a pre-AEDPA standard, assuming, arguendo, that the issue of Ground 2 is properly before the court, the court finds that Petitioner has not established that his constitutional rights were violated by the prosecutor's reading the letter at issue as Petitioner has not shown that the outcome of his trial was affected by the reading of this letter. See Robinson, 278 F.3d at 865-66. Moreover, further assuming, arguendo, that the AEDPA standard of review is applicable to Petitioner's Ground 2, the court finds that the decision of the Missouri appellate court, to the extent it addressed the issue of Ground 2, was not contrary to federal law and that it was a reasonable interpretation of federal law. The court also finds that the Missouri appellate court's decision in regard to the issue of Petitioner's Ground 2 is a reasonable determination of the facts in light of the evidence presented at his trial. See § 2254(d)(2). As such, the court finds that Petitioner's Ground 2 is without merit and that he should be denied habeas relief on its basis.

**Ground 3** - **Petitioner received ineffective assistance of counsel during sentence because trial counsel failed to object to the admission of the victim's letter:**

Upon addressing the issue of Petitioner's Ground 3, the Missouri appellate court held:

In this case, Counsel testified at the evidentiary hearing that it was typically his strategy to allow the prosecutor to read a victim's letter into evidence without objection because Counsel believed that the prosecutor would put the victim on the stand if there was an objection. Counsel further stated that, "[t]he last thing that [he would] want to do is put the victim back up there to start crying and yelling." Counsel testified that he would prefer to have the prosecutor read the letter because that "was quick and easy." The motion court concluded that Reeder was not entitled to relief because Counsel's failure to object to the Letter was reasonable trial strategy. We agree with the motion court's conclusion. Therefore, the motion court's denial of post-conviction relief on this ineffective assistance of counsel claim is not clearly erroneous. Point two is denied.

Resp. Ex. M at 5-6.

Petitioner contends, in support of Ground 3, that "it is clear that [the] letter was inadmissible hearsay under Missouri law," that it violated the confrontation clause, and that it violated the due process clause because it contained a false allegation. Doc. 18 at 35. The court has addressed Petitioner's confrontation clause argument and allegation regarding the alleged falsity of T.W.'s letter above, in regard to Ground 2. Petitioner further argues that because counsel stated that he had never seen the letter before it was introduced into evidence, "it is abundantly clear that no objection was made because trial counsel did not carefully read its contents before it was admitted into evidence without objection." Doc. 18 at 36.

The court has set forth, above, the standard applicable to determining whether a habeas petitioner has received ineffective assistance of counsel. In regard to a claim by a habeas petitioner that his penalty-phase counsel was ineffective for failing to object to victim-impact testimony which was non-admissible under state law, the Eighth Circuit held in Nance v. Norris, 392 F.3d 284, 293 (8th Cir. 2004), that such a statement's being inadmissible under state law did "not mean the failure to object falls below a standard of objective reasonableness. In fact, a reasonable lawyer may wish to refrain from objecting to this type of statement ... in front of a jury, and in the midst of her impact

testimony.'"[7]  Also, as discussed above, the Confrontation Clause generally does not apply to sentencing proceedings. United States v. Johnson, 495 F.3d 951, 976 n.23 (8th Cir. 2007).

Consistent with the two-pronged test of Strickland, the Missouri Court of Appeals considered that it was within the bounds of reasonable performance for defense counsel to not have objected when the prosecutor read the victim's letter. In particular, the appellate court considered counsel's testifying that he preferred that the letter was read by the prosecutor because it was quick. As such, the Missouri appellate court agreed with the motion court that this was reasonable trial strategy. Moreover, the court notes that counsel testified that he did not want the prosecutor to put the victim back on the stand and that he preferred that the prosecutor read the letter. Resp. Ex. L at 11. Additionally, the court notes that even if it was unreasonable for counsel not to object, the objection would have been without merit as the Confrontation Clause was not applicable. See Johnson, 495 F.3d at 976 n.23.  In any case, had counsel objected, it is likely that the judge would have overruled the objection. See id.  Significantly, the jury recommended a sentence less than it could have on all Counts.  The jury recommended ten years on two of the statutory rape Counts and fifteen years on the third Count of statutory rape although it could have recommended life imprisonment on each of these Counts.  Also, the jury recommended three years for attempted child molestation, although it could have recommended seven years.  The trial court accepted the jury's recommendations. Resp. Ex. C at 5-6, 62-63, 85-88.  Under such circumstances, even if it was unreasonable for counsel not to object to the reading of the victim's letter, Petitioner could not have established that he was prejudiced by counsel's performance. As such, the court finds that the decision of the Missouri appellate court in regard to the issue of Petitioner's Ground 3 is not contrary to federal law and that

---

[7]  Nance v. Norris, 392 F.3d 284, 293 (8th Cir. 2004), was a capital case, and as such, it was the mother of the victim who testified during the sentencing stage.

it is a reasonable application of federal law. See Strickland, 466 U.S. at 687-89; Nance, 392 F.3d at 293. The court also finds that the Missouri appellate court's decision in regard to the issue of Petitioner's Ground 3 is a reasonable determination of the facts in light of the evidence presented at his trial. See § 2254(d)(2). The court finds, therefore, that Petitioner's Ground 3 lacks merit and that habeas relief on its basis should be denied.

**Ground 4 - Petitioner received ineffective assistance of counsel because counsel failed to admit Petitioner's employment records into evidence:**

In support of Ground 4, Petitioner argues that his employment records would have shown that he was working almost every evening during November 1999, when one of the offenses was alleged to have occurred. Doc. 1 at 16. Petitioner contends that his work records would have shown that there were "only a handful of days in which he could have possibly committed the crime." Doc. 18 at 40. Petitioner also argues that counsel's failure to present a partial alibi through Petitioner's work records constituted ineffective assistance of counsel under Strickland; that the State court did not apply Strickland; and that, therefore, this court should do so.

Specifically, upon addressing the issue of Petitioner's Ground 4, the Missouri appellate court held:

> The motion court found that the employment records did not establish an alibi because they only demonstrate the number of hours Reeder worked at his employer on a particular day rather than the specific hours he worked. Thus, the motion court concluded that there is no reasonable probability that, but for the omission of the employment records, the result of Reeder's trial would have been different.

> The evidence at trial reveals that T.W. was raped in November 1999, sometime late at night at approximately 10:00 p.m. Reeder's employment records do not establish the specific hours and days that he worked in November 1999. Moreover, Reeder admits in his brief that "there were…five days during that month during which he could have possibly raped the victim at 10 o'clock in the evening." Because we find that the employment records do not place Reeder in a different place at the time the rape occurred so as to render it impossible for him to be the guilty party, they do not establish an alibi. See Williams v. State, 8 S.W.3d 217, 220 (Mo.

App. E.D. 1999) (stating that "an alibi is a defense that places the defendant at the relevant time in a different place than the scene involved and so removed therefrom as to render it impossible for the defendant to be the guilty party") (internal quotation omitted). Accordingly, there is no reasonable probability that the result of Reeder's trial would have been different if Counsel had presented Reeder's employment records.

Therefore, Reeder has not demonstrated prejudice entitling him to postconviction relief.

Resp. Ex. M at 6-7.

First, Petitioner incorrectly states that the State court did not consider Strickland. Prior to considering Petitioner's claims of ineffective assistance of counsel, the Missouri appellate court specifically held that Strickland applied. Resp. Ex. M at 4-5. Second, consistent with the second prong of Strickland's two-part test, the Missouri appellate court found that Petitioner could not establish prejudice based on counsel's failure to introduce his employment records because T.W. was raped at 10:00 p.m. sometime in late November 1999 and Petitioner's employment records did not show the specific hours and days he worked in November 1999.[8] The court also considered that Petitioner could not establish prejudice because he admitted that there were five days during November 1999 during which he could have raped the victim at 10:00 p.m. The Missouri appellate court concluded that Petitioner could not establish prejudice by counsel's failure to introduce his employment records because the records would not have established that Petitioner was in a different place at the time the rape occurred, rendering it impossible for him to have committed the rape. To the extent that the Missouri appellate court did not address the reasonableness prong of the Strickland test in regard to Ground 4, the court notes that counsel testified at the post-conviction relief hearing

_____

[8]    The victim testified that the rape had occurred sometime in November 1999, prior to Thanksgiving, at a time when it was dark outside and she was asleep. Resp. Ex. D at 137-38. On cross-examination she guessed that the rape occurred at 10:00 p.m. Resp. Ex. D at 184-85.

that he examined Petitioner's employment records prior to trial and decided not to use them because the records did not establish the specific hours that Petitioner had worked during November 1999; thus, they did not establish an alibi. Resp. Ex. L at 6. Under such circumstances, it cannot be said that counsel's failure to introduce Petitioner's employment records was unreasonable. In any case, both prongs of the <u>Strickland</u> test must be met for a habeas petitioner to establish ineffective assistance of counsel. See <u>Auman</u>, 67 F.3d at 162. As such, the court finds that the decision of the Missouri appellate court in regard to the issue of Petitioner's Ground 4 is not contrary to federal law and that it is a reasonable application of federal law. The court also finds that the Missouri appellate court's decision in regard to the issue of Petitioner's Ground 4 is a reasonable determination of the facts in light of the evidence presented at his trial. See § 2254(d)(2). The court further finds that Petitioner's Ground 4 is without merit and that habeas relief on its basis should be denied.

**V.**

**CONCLUSION**

The court finds that Petitioner's § 2254 Petition is untimely. Alternatively, the court finds that Petitioner's Ground 1 is not cognizable pursuant to § 2254; that Petitioner has procedurally defaulted Ground 2; and that Grounds 1-4 are without merit. As such, the court finds that Petitioner's § 2254 Petition should be denied in its entirety. The undersigned further finds that the grounds asserted by Petitioner do not give rise to any issues of constitutional magnitude. Because Petitioner has made no showing of a denial of a constitutional right, Petitioner should not be granted a certificate of appealability in this matter. See <u>Tiedeman v. Benson</u>, 122 F.3d 518, 522 (8th Cir. 1997).

Accordingly,

**IT IS HEREBY RECOMMENDED** that the Petition filed by Petitioner for habeas corpus pursuant to 28 U.S.C. § 2254 be **DENIED** and **DISMISSED**; Doc. 1

**IT IS FURTHER RECOMMENDED** that, for the reasons stated herein, any motion by Petitioner for a certificate of appealability be **DENIED**;

The parties are advised that Petitioner has fourteen (14 ) days in which to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. See Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990).

/s/Mary Ann L. Medler
MARY ANN L. MEDLER
UNITED STATES MAGISTRATE JUDGE

Dated this 2nd day of March, 2011.